## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                            **Case No. 25-CR-22**

**QIANDRE E. BEENE-HART**
    **Defendant.**

## DECISION AND ORDER

Defendant Qiandre Beene-Hart moved to suppress evidence seized from his vehicle. The magistrate judge handling pre-trial proceedings issued a recommendation that the motion be denied. Defendant objects. My review is de novo. Fed. R. Crim. P. 59(b).

### I. FACTS AND BACKGROUND

The parties agree on the underlying facts and have not requested an evidentiary hearing. (See R. 44 at 2-4; R. 41 at 1-3; R. 36 at 2-6; R. 25 at 2-4.) On July 18, 2023, at about 1:45 p.m., a Wisconsin State Patrol (WSP) trooper patrolling the streets of Milwaukee observed a beige Buick Lacrosse speeding and passing in the parking lane. The trooper attempted a traffic stop, and the Buick eventually came to a halt, but the driver then accelerated and drove away as the trooper approached on foot. The trooper pursued, observing the Buick drive recklessly and at high speeds, before terminating pursuit when he lost sight of the vehicle.

Based on the Buick's license plate, the trooper confirmed that defendant was the registered owner of the vehicle. The trooper also learned that defendant was on state supervision for fleeing and eluding. Finally, the trooper learned that law enforcement databases listed two addresses for defendant: 4350 N. 39th Street and 5173 N. 39th Street. The state

Department of Corrections advised that defendant lived at 5173 N. 39th Street, which is also the address linked to the Buick's registration.

Troopers decided to check both addresses, and at about 2:00 p.m. they proceeded to 4350 N. 39th Street, observing the Buick parked in the driveway and a man they believed to be defendant standing in front of the residence. Defendant ran toward the backyard, ignoring commands to stop, and the troopers pursued on foot. As they ran, the troopers observed the Buick's parking lights flash multiple times, as if someone had locked the vehicle remotely with a key fob. Defendant jumped a fence in the rear of the property, and the troopers followed, locating defendant behind a vehicle parked in the rear of a nearby property. The troopers took defendant into custody and during a search incident to arrest recovered from his person a wallet containing his driver's license, over $900 in cash, and a set of keys to the Buick. They also recovered two cell phones from his flight path.

The troopers requested assistance to transport defendant to a hospital for treatment of a cut to his hand sustained during the foot pursuit. While in defendant's presence, one of the troopers informed other officers that they chased defendant "from his house." (R. 44 at 3.) Defendant interjected, "that's not my house." (R. 44 at 3.) Defendant's driver's license listed his address as 5173 N. 39th Street.

The troopers decided to tow the Buick "for further investigation." (R. 44 at 3.) One trooper remained behind with the Buick until about 3:49 p.m., when the tow truck arrived, then followed it to a secure impound facility in West Allis. At about 4:26 p.m., an officer conducted a canine sniff of the Buick, with the dog alerting near the passenger door.

On July 20, 2023, the troopers obtained a warrant from a Milwaukee County court commissioner to search the Buick for evidence of the crimes of fleeing/eluding, recklessly

2

endangering safety, and possession of a controlled substance. On executing the warrant, troopers found a loaded Glock pistol under the driver's seat, as well as remnants of a green leafy substance suspected to be marijuana shake.

The government subsequently charged defendant with felon in possession of a firearm based on the gun recovered from his vehicle. Defendant moved to suppress the firearm, arguing that the troopers violated the Fourth Amendment when they seized and towed his vehicle from private property without a warrant (R. 25 at 5-6), and that the troopers' decision to later obtain a search warrant could not save the initial wrongful seizure (R. 25 at 7). Defendant acknowledged that, under the "automobile exception" to the warrant requirement, police may conduct a warrantless search based on probable cause,[1] but he argued the exception did not apply in this case, where the vehicle was parked on private property. (R. 25 at 6.)

Defendant further acknowledged that, as a person under felony supervision, he and his property were subject to search pursuant to Wisconsin Act 79.[2] However, he argued that the statute did not authorize the <u>seizure</u> of his vehicle, legally parked on private property, in the

---

[1] See United States v. Davis, 119 F.4th 500, 506 (7th Cir. 2024) ("The automobile exception to the warrant requirement . . . permits an officer to search a vehicle without a warrant if the search is supported by probable cause[.]") (internal quote marks omitted).

[2] Act 79, codified at Wis. Stat. §§ 302.113(7r) & 973.09(1d), authorizes a law enforcement officer, without consent, a warrant, or probable cause, to search the residence and any property under the control of a person on extended supervision or felony probation on reasonable suspicion that the person is committing, is about to commit, or has committed a crime or a violation of a condition of supervision. United States v. Chang, 999 F.3d 1059, 1063 (7th Cir. 2021). "Any search conducted pursuant to this subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing." Wis. Stat. § 973.09(1d).

3

absence of some exigency requiring it be towed.³ (R. 25 at 8.) Nothing, defendant claimed, prevented the troopers from sitting with the vehicle on scene until a warrant could be obtained. (R. 25 at 9.)

The government responded that the police had authority to seize and later search the vehicle pursuant to Act 79. The government noted that the statute does not dictate where or when the search must occur, only that it be "conducted in a reasonable manner." (R. 37 at 7.) The government further noted that the Seventh Circuit has upheld warrantless searches of the property of persons on supervision, including under Act 79, United States v. Caya, 956 F.3d 498 (7th Cir. 2020), and even in situations where the search occurred several days after the person's arrest, United States v. Wood, 16 F.4th 529 (7th Cir. 2021). Defendant cited no authority, the government noted, requiring the troopers to search the Buick at the arrest site. (R. 36 at 11.) Defendant complained that the troopers seized the vehicle from private property, but the facts known to the troopers at the time suggested that 4350 N. 39th Street may not have been his address; indeed, defendant denied that he lived there. (R. 36 at 11.)

The government further argued that the search could be upheld under the automobile exception. (R. 36 at 12.) The troopers identified the Buick as the vehicle involved in the fleeing/eluding incident and reasonably concluded that defendant, the registered owner, who ran from the troopers 15 minutes after the crime occurred and had the keys in his pocket, was the operator. This, the government argued, gave the troopers probable cause that the vehicle not only contained evidence of a crime but was in fact the instrumentality of the crimes they

---

³Defendant appeared to concede that the troopers had reasonable suspicion to conduct an Act 79 search on the scene but argued they lacked probable cause to seize the Buick. (R. 25 at 9.)

4

were investigating. The government cited WSP standard operating procedure to hold or seize vehicles when the trooper has probable cause to believe the vehicle has been used in a crime. (R. 36 at 12; R. 36-1 at 2.) Although defendant was in custody, the Buick remained mobile. Moreover, the troopers had no information that the vehicle, which registered to 5173 N. 39th Street, belonged at 4350 N. 39th Street. (R. 36 at 13.)

Finally, the government argued suppression would not be warranted under the inevitable discovery doctrine.[4] (R. 36 at 14.) The government noted that, even assuming the seizure of the Buick was unlawful, the troopers took steps to obtain a search warrant, pursuant to which they discovered the gun at issue. (R. 36 at 15.)

Defendant replied that the Seventh Circuit's Wood decision was inapplicable, as he was on probation rather than a parole/extended supervision. (R. 41 at 4-5.) The defendant in Wood was on parole, and the Seventh Circuit distinguished a Sixth Circuit case involving the post-arrest search of the property of a probationer. Defendant concluded that, while Act 79 may have permitted a search of the Buick on scene, something the troopers could have easily done, they instead decided to seize it for purposes of further investigation, not to secure evidence of a crime. (R. 41 at 5-6.)

As for the automobile exception, defendant replied that the officers needed probable cause plus some exigency in order to seize the Buick from private property. The government did not address exigency but instead argued that defendant did not live at 4350 N. 39th Street. (R. 41 at 6.) Defendant acknowledged that the troopers had conflicting information as to where,

---

[4]Under this doctrine, if the government can establish that the evidence at issue, even though unlawfully obtained, would have inevitably been discovered through lawful means, then the deterrence rationale animating the exclusionary rule has so little basis that the evidence should be admitted. Nix v. Williams, 467 U.S. 431, 444 (1984).

5

on N. 39th Street, he lived. He nevertheless argued that he lived at 4350, where the troopers found him. (R. 41 at 1-2.) He noted that, in the search warrant affidavit, the affiant averred that troopers "responded to the registered owner's address to attempt to locate the vehicle." (R. 41 at 3.) Defendant explained that the house was owned by his grandparents, and he rented the upper unit, making his statement to the troopers, "that's not my house," literally true (although more likely a weak attempt to throw off law enforcement). (R. 41 at 3.)

Finally, defendant argued against inevitable discovery, claiming that WSP violated its own operating procedure, which states that "an officer shall obtain a search warrant prior to making a 'seizure as evidence' whenever the vehicle to be seized is on private property and it is not likely to be removed or tampered with while a warrant is being obtained." (R. 41 at 6; R. 36-1 at 2 ¶ 4.D.3.) Here, the troopers obtained the warrant, which was based in part on the post-seizure dog sniff, two days after the seizure. (R. 41 at 7.)

The magistrate judge analyzed the case differently than did the parties, concluding that the troopers lawfully seized the Buick as an "instrumentality" of the crime they were investigating under the "plain view" doctrine.[5] (R. 44 at 5.) Specifically, he found that the troopers could plainly view the Buick from the street, that they lawfully entered the private property to pursue a fleeing suspect, and that they had probable cause to believe the Buick was an instrumentality of the crimes they were investigating (fleeing and recklessly endangering safety). (R. 44 at 6.) The magistrate judge further found that exigent circumstances supported the seizure:

---

[5] Under this doctrine, a warrantless seizure is permissible if the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; the item must have been in plain view, and its incriminating character must be immediately apparent. United States v. Contreras, 820 F.3d 255, 262 (7th Cir. 2016).

6

> Here, the mobility of the vehicle compelled the troopers to preserve it as evidence before whoever else may have had access to it could move it. After all, the troopers had not been able to see the driver of the fleeing vehicle and did not know whether other keys existed besides those found on Beene-Hart's person. The troopers did not have time to secure a search warrant before arriving at the residence under rapidly unfolding events. For these reasons, exigent circumstances supported the troopers' decision to impound the Buick.

(R. 44 at 7.)

Finally, the magistrate judge noted that the dog sniff did not constitute a search for Fourth Amendment purposes; because the police had already lawfully seized the vehicle, the sniff did not unreasonably prolong the encounter; and defendant did not otherwise challenge the validity of the search warrant.[6] Because he found that the troopers acted lawfully in seizing the vehicle as an instrumentality of a crime in plain view, the magistrate judge did not reach the parties' arguments under Act 79, the automobile exception, or the inevitable discovery doctrine. (R. 44 at 8.)

## II. DISCUSSION

Everyone seems to agree that the troopers could have lawfully searched the Buick on the scene based on Act 79. (See R. 25 at 9; R. 36 at 11-12; R. 41 at 5.) The troopers had reasonable suspicion to believe defendant committed the offense of fleeing/eluding. They located the Buick involved in the chase within 15 minutes, and defendant, the registered owner, fled on foot when the troopers approached, the keys to the Buick in his pocket. This triggered the search authority under Wis. Stat. § 973.09(1d). Such search conditions are permissible under the Fourth Amendment. See Caya, 956 F.3d at 502 (citing United States v. Knights, 534 U.S. 112, 122 (2001) (upholding the search of a probationer's property supported by

---

[6] As defendant clarifies in his objections, he does argue that the search warrant was the fruit of the earlier unlawful seizure. (R. 48 at 4.)

7

reasonable suspicion and authorized by a condition of probation)); see also Samson v. California, 547 U.S. 843 (2006) (upholding a state law permitting peace officers to search a parolee without cause).

The question presented is whether the troopers' decision to seize the Buick and search it later (pursuant to a warrant) violated the Fourth Amendment. It did not.

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Knights, 534 U.S. at 118-19 (internal quote marks omitted). In the context of persons under supervision, courts balance the person's privacy expectations, as shaped by state law, against the state's interests in reducing recidivism and promoting reintegration. Wood, 16 F.4th at 535. As the Supreme Court explained in Knights, probationers do not enjoy the absolute liberty to which every citizen is entitled, 534 U.S. at 119, and the search condition the Wisconsin legislature decided—via Act 79—to impose on persons on felony probation significantly diminished defendant's reasonable expectation of privacy, see id. at 120.

That the troopers seized the Buick and searched it later does not alter the balance. In Wood, the Seventh Circuit upheld the warrantless search of a parolee's cell phone, performed seven days after his arrest, pursuant to a condition permitting a search based on "reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole." 16 F.4th at 532. The court declined to apply Riley v. California, 573 U.S. 373 (2014), which held that cell phones fall outside the search incident to arrest exception, noting that the "Supreme Court's close attention to balancing interests means that Riley cannot

8

be casually applied to other contexts." 16 F.4th at 534. The court instead held that Knights and Samson applied. Id. at 534-35. Given the parolee's diminished expectation of privacy and the state's strong governmental interests in reducing recidivism and promoting reintegration, the court found the search of the cell phone reasonable. Id. at 536.

The parolee relied on United States v. Fletcher, 978 F.3d 1009 (6th Cir. 2020), where the Sixth Circuit disapproved the warrantless search of a probationer's cell phone. The Seventh Circuit declined to follow Fletcher. As is pertinent here, the Wood court stated:

> Fletcher held that a state's interest in supervising a probationer terminates abruptly once the phone is secured. This reasoning, imported from Riley, does not find support in Knights and Samson. The state's interests are different here and justify a post-arrest, post-seizure search of a parolee's cellphone. Fletcher relied on Riley's explanation that once law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone. Fletcher also observed that a seized cellphone does not pose a safety risk. But the twin interests of preventing evidence destruction and protecting officers are not the interests underpinning Knights and Samson. Rather, Knights and Samson support the state's ongoing supervisory role over parolees. If such supervision abruptly terminated once a parolee was arrested—whether for a failure-to-appear violation or a serious crime—the continuity of a state's parole system would be severely impeded. The Fourth Amendment does not dictate this unreasonable result.

16 F.4th at 537 (internal citations and quote marks omitted).

Defendant argues that Wood is inapposite because he, like the defendant in Fletcher, was on probation rather than parole or extended supervision (Wisconsin's version of parole, see Caya, 956 F.3d at 503). It is true that the Wood court noted this distinction. 16 F.4th at 536 (noting that Fletcher involved a probationer rather than a parolee, and that parolees have fewer expectations of privacy than probationers). But the court went on to hold that Fletcher does "not control for other reasons." Id. at 536. The Wood court further relied on both Knights (a probation case) and Samson (a parole case). Id. at 536 ("This is why Knights and Samson

9

permit warrantless searches with less than probable cause for probationers and parolees alike; it makes eminent sense.") (internal quote marks omitted).[7]

Consistent with Wood, it was reasonable for the troopers to seize the Buick and search it later, in a secure location. As the government notes, nothing in Act 79 requires that searches to be conducted immediately, only that they be done in a reasonable manner. Under the circumstances here, where the Buick registered to a different address and other persons could have possessed keys, it was reasonable for the troopers to tow the vehicle, which could have been removed or tampered with had the troopers left it parked there.[8] Defendant develops no argument that the intermediate step of a seizure prior to the search intruded on his privacy to a materially greater degree.[9]

The parties' objections briefing understandably focuses on the magistrate judge's analysis. Because I find that Act 79 supports the search, I need not address all of these

---

[7]Wisconsin, like Indiana, treats felony probationers and persons on extended supervision the same in this context. See Wood, 16 F.4th 536 n.1 ("Indiana applies Samson's holding to probationers, in effect lowering a probationer's privacy expectation to that of a parolee.").

[8]This is not to suggest that the seizure was reasonable only because the troopers reasonably feared loss or destruction of evidence. As the Wood court explained, "the twin interests of preventing evidence destruction and protecting officers are not the interests underpinning Knights and Samson. Rather, Knights and Samson support the state's ongoing supervisory role over parolees." 16 F.4th at 537. However, these concerns do bolster the reasonableness of the troopers' actions in this case.

[9]It is unnecessary to delve into the differences between seizures and searches, although I note the Supreme Court's statement that a seizure is "generally less intrusive" than a search. Segura v. United States, 468 U.S. 796, 806 (1984). The Court has also stated: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Chambers v. Maroney, 399 U.S. 42, 52 (1970).

arguments. For the sake of completeness, I note that the curtilage and vehicle seizure cases defendant cites are inapposite. (R. 48 at 5-6, 9; R. 56 at 1-3.) Absent exigent circumstances, the automobile exception does not permit police to enter private property to search a car, even with probable cause. But Act 79 permits the search of a felony probationer's home and any property under his control based on reasonable suspicion. See Caya, 956 F.3d at 501. Defendant develops no argument that it was unlawful for the troopers to chase him through the property when he ran; nor does he contend that the officers lacked reasonable suspicion to believe he committed the fleeing offense when, on apprehension, they found the keys to the Buick in his pocket.

Defendant argues in the objections that Act 79 speaks only of searches and does not authorize seizures. (R. 48 at 9; R. 56 at 3-4.) However, I agree with the government that nothing in the statute requires law enforcement to search property at the location in which it is found. (R. 52 at 4.) So long as it is reasonable to do so, police may conduct the search at another location.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 44) is adopted, as stated herein, and defendant's motion to suppress (R. 25) is denied.

**IT IS FURTHER ORDERED** that this matter is scheduled for telephonic status on **Tuesday, November 18, 2025, at 11:15 a.m.**

Dated at Milwaukee, Wisconsin, this 13th day of November, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

11